**SUBURBIA GARDEN NURSERY, INC., Plaintiff,**

v.

**DIRECTOR, FEDERAL EMERGENCY MANAGEMENT AGENCY, Defendant and Third Party Plaintiff,**

v.

**COROON & BLACK OF MISSOURI, INC., Third Party Defendant.**

No. 85–2551C(B).

United States District Court, E.D. Missouri, E.D.

May 21, 1986.

David Danis, St. Louis, Mo., for plaintiff.

Edwin Brzezinski, Laneta Gregorie, St. Louis, Mo., for defendant and third party plaintiff.

## MEMORANDUM AND ORDER

REGAN, District Judge.

This matter is before the Court on cross-motions for summary judgment on plaintiff's claim to recover a loss allegedly insured on a policy of flood insurance issued by Federal Emergency Management Agency (FEMA), an independent agency of the United States Government, pursuant to its administration of the National Flood Insurance Program. The complaint is in two counts, the first on the policy and the second on the allegation that defendant is estopped to deny coverage.

As its name implies, Suburbia Garden Nursery, Inc. operates a nursery and landscape business. The insurance policy, issued in consideration of a premium payment of $185 on the basis of the application therefor, purports to provide flood insurance coverage for a structure used in connection with plaintiff's business for a one year term from July 20, 1984 to July 20, 1985. The structure was described by plaintiff's agent in the application for the policy as a "shelter." The sole controverted issue on Count I (other than the amount of damage sustained) is whether, as that term is defined in the policy, the "shelter" is a "building" eligible for flood insurance under the National Flood Insurance Program. In our judgment, it is not such a building.

As defined in the policy for purposes of coverage, "building" must be "a walled and roofed structure." Walled and roofed "means the building has in place two or more exterior, rigid walls and the roof is fully secured so that the building will resist flotation, collapse and lateral movement."

The structure in question is approximately 50 feet by 111 feet. On each of the two longer sides, spaced approximately 10 feet apart, are 6″ x 6″ upright wooden posts each of which extends from the ground to the top of the structure. Attached thereto and extending to a point somewhat less than midway of the height of the posts is a picket-type fence built of 2″ x 2″ wood slats spaced at 5 or 6 per foot which are secured to the posts and the fence by two horizontal timbers, one 2″ x 6″ and the other 2″ x 2″. The two shorter ends of the structure are completely open. The structure is topped by a lattice-like cover. A much clearer understanding of the nature of this

structure and the manner of its original construction can be derived from the appended photographs (all taken after the flood damage [1]) which have been submitted by the parties.

In our judgment, the structure was neither "walled" nor "roofed" in the context in which those terms are used in the policy. As so used, the words are free from ambiguity. They must be given their plain and ordinary meaning. That the words "wall" and "walled" in the abstract have other meanings in other contexts (e.g. Berlin Wall, Chinese Wall, sea wall, garden wall) is irrelevant. What is here involved is the use of the words as applied to the *exterior* of the *building itself* and constituting an integral part of such building.

In common understanding an exterior wall of a building constitutes *one side* thereof extending from ground level to the "roof." It certainly does not mean a group of support posts spaced ten feet (or more) apart. Nor does the fact that a fence is attached to the posts make them any the more a wall.

We are also of the opinion that the lattice-like cover of the structure open to the elements is not a "roof" as that term is used in the policy and in the ordinary understanding of its meaning.

Plaintiff argues that the sole purpose of requiring the building to be walled and roofed is to be assured that it "will resist flotation, collapse and lateral movement." On that premise it contends that inasmuch as the heavy wood posts provided "resistance" to collapse and lateral movement they sufficed for that purpose. We do not agree. We add that it appears from the photographs that one of the fences collapsed and that the entire structure was caused to lean to the left.

■ We next address the issue of whether FEMA is estopped to deny coverage. Although there may be factual situations in which estoppel may be invoked against an agency of the government such as FEMA, we hold as a matter of law that no such factual situation is here present. FEMA was told no more than that the structure was a "shade shelter." This information was wholly insufficient to apprise FEMA that the structure did not have two exterior rigid walls or a roof, and so was not a "building." Plaintiff knew the facts. FEMA did not. Necessarily implicit in plaintiff's claim of estoppel is the unspoken premise, with no evidentiary support, that no structure could be a "shade shelter" if it had the required two exterior walls and a roof, and that FEMA knew (or should have known) such to be the fact. It is clear to us that the presence of two exterior walls and a roof would in no way prevent the structure from being used as a shade shelter. FEMA had no reason to doubt that the shelter for which insurance was applied was a building as defined in the policy.

The case of *Portman v. United States,* 674 F.2d 1155 (7 Cir.1982), relied on by plaintiff, is wholly inapposite even if it were to be followed by the Eighth Circuit Court of Appeals. That case involved *affirmative representations* by an agent of the Postal Service that a package plaintiff sought to send by "Express Mail" would be fully insured against loss up to $50,000. Had plaintiff not been so informed he could have utilized the services of a private company with which the postal service was in competition. No such situation is here present. FEMA does not compete with private insurance companies. There is no contention that flood insurance could have been obtained from any other source. That is the very reason Congress initiated the National Flood Insurance Program. So, too, there is, in the instant case, an entire absence of any affirmative representation by FEMA on which plaintiff could rely that the shade shelter, *as constructed,* was a "building" as defined in the policy.[2] Estoppel is not here present under any view of the facts.

---

1. One of the picket-type fences was washed out, and a portion of the cover of the structure was displaced by the flood.

2. We add that even if plaintiff's claim were to be based on representations, as distinguished from estoppel, recovery thereon would be barred by the Federal Tort Claims Act (28 U.S.C. § 2680).

It follows that defendant's motion for summary judgment should be and it is HEREBY SUSTAINED. Plaintiff's motion is OVERRULED. Judgment will be entered in accordance herewith.

## JUDGMENT

The Court having this day entered its Memorandum and Order herein,

SO THEREFORE, in accordance therewith and for the reasons therein stated, IT IS HEREBY ORDERED AND adjudged that plaintiff take nothing and that plaintiff's complaint and each of the Counts thereof be and the same are HEREBY DISMISSED WITH PREJUDICE.